

**ORDERED in the Southern District of Florida on July 13, 2011.**

**Paul G. Hyman Jr., Chief Judge**
**United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                          Case No.:10-33758-PGH

**THE SPA AT SUNSET ISLES**                     **Chapter 11**
**CONDOMINIMUM**
**ASSOCIATION, INC.,**

      **Debtor.**

_____/

**ORDER GRANTING IN PART DEBTOR'S MOTION FOR SURCHARGE**
**PURSUANT TO 11 U.S.C. § 506(c) AGAINST ONEWEST BANK**

      **THIS MATTER** came before the Court upon The Spa at Sunset Isles

Condominium Association, Inc.'s (the "Debtor") *Motion for Surcharge Pursuant to 11*

*U.S.C. § 506(c)* (the "Motion") and OneWest Bank FSB's ("OneWest")[1] Response.

The Debtor filed the Motion pursuant to its Plan of Reorganization (D.E. 31) (the

---

[1] In 2009, the FDIC sold Indymac Bank, FSB to OneWest, including mortgages at issue in this case. *See OneWest's Request for Judicial Notice* (D.E. 151); *see also* Press Release, FDIC, FDIC Closes Sale of Indymac Fed. Bank, Pasadena, Cal. (Mar. 19, 2009) (on file with the FDIC). Therefore, references to Indymac Bank are interchangeable with OneWest throughout the record, exhibits, and this Order.

"Plan"),[2] which the Court approved on February 15, 2011 (the "Confirmation Hearing"). Of the numerous banks that are the target of the Motion, only OneWest filed a Response. In this Order, the Court will address OneWest's substantive arguments and grant the Motion in part as it relates to OneWest. The Court will enter a separate order as to the banks that did not object to the Motion.

The Court held an initial hearing on the Motion on March 8, 2011, and an additional hearing on June 21, 2011 to clarify several material facts. At both hearings, the Debtor offered evidence and proffered facts without objection. Additionally, the Debtor and OneWest each submitted written proposed orders (D.E. 152 and 153, respectively), as well as a *Joint Stipulation of Facts* (the "Joint Stipulation") (D.E. 149). The Court, having considered the Debtor's exhibits and proffers, the written proposed orders, and the Joint Stipulation, hereby makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.   *The Debtor's Background*

The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on August 12, 2010 (the "Petition Date"). The Debtor is a condominium association, a Florida not-for-profit corporation created in connection with the formation of the Spa at Sunset Isles Condominium (the "Condominium"), as

---

[2] Capitalized terms not defined in this Order have the meaning ascribed to them in the Plan.

reflected by the Condominium's Declaration of Condominium (the "Declaration").[3] Pursuant to the Declaration and applicable Florida law, the Condominium is comprised of three classes of real property: (1) 232 individual residential apartment units (a "Unit" or "Units"), as described in the Declaration; (2) Common Elements, comprised of all portions of the Condominium other than Units and Limited Common Elements; and (3) Limited Common Elements, comprised of any portion of the Common Elements which serves one or more Units but, by its nature, cannot serve all Units.[4]

Florida law and the Declaration govern the relationship between the Debtor, the Common Elements, and individual Units. Appurtenant to each Unit is an undivided interest in the Common Elements, apart from which a Unit cannot be conveyed or encumbered separately. The Debtor is required to maintain the Common Elements, and is the only person or entity permitted to do so under the Declaration and applicable Florida law. Virtually all of the Debtor's revenues are generated through the collection of Assessments, as defined in the Declaration, paid

---

[3] The Declaration is recorded at Official Records Book 19935, Page 1260 of the Public Records of Palm Beach County, Florida.

[4] Specifically, the Common Elements include:
1. All structural walls, floors, columns, roofs and other structural elements of the various buildings within the Condominium that contain Units;
2. All parking lots, driveways and other paved areas intended to provide vehicular access within the Condominium, together with all access gates and perimeter fences within the Condominium;
3. All of the real property contained within the Condominium, including all landscaping and grass located thereon and also including all land beneath the various buildings containing Units within the Condominium; and
4. The recreational facilities within the Condominium, including the clubhouse and swimming pool.

The Limited Common Elements include patios and balconies adjoining Units, and garages, storage spaces and/or parking spaces specifically assigned to a respective Unit.

by the owners of individual Units in the Condominium.  Pursuant to Florida law, the Debtor has a lien on each Unit to secure the payment of Assessments (an "Assessment Lien").  In this case, each of the Debtor's Assessment Liens is inferior to the mortgages on each Unit in the Condominium.

In 2006 and 2007, sales of Units took place during a so-called condo-conversion, with Units selling for an average sale price of approximately $250,000.00.    Today, there is a recorded first mortgage encumbering the overwhelming majority of Units in the Condominium, with a recorded second mortgage also encumbering many Units.  The average first mortgage debt against Units as of June 21, 2011 was approximately $218,000.00 per Unit.  As of that same date, the average value of a Unit was approximately $48,000.00.   There is not sufficient equity in any Unit to exceed the amount of that Unit's first mortgage.  In other words, every second mortgage and Assessment Lien is completely undersecured.

2.    *The Foreclosure Proceedings*

Prior to the Petition Date, mortgage lenders (the "Foreclosure Plaintiffs") initiated more than 180 mortgage foreclosure proceedings (the "Mortgage Foreclosure Proceedings") against Unit owners within the Condominium.  Because a Unit cannot be conveyed separately from its interest in the Common Elements, the Common Elements constituted part of the collateral in every Mortgage Foreclosure

Proceeding.[5]  The Debtor has an interest in these Units by virtue of its statutory obligation to maintain the Common Elements, and by virtue of its Assessment Liens.  Consequently, Foreclosure Plaintiffs named the Debtor as a defendant in each Mortgage Foreclosure Proceeding.  In most of these Proceedings, the Foreclosure Plaintiffs faced either token or no opposition.  Nevertheless, over 100 Mortgage Foreclosure Proceedings were pending as of the Confirmation Hearing.  These cases were pending for an average of 736 days, with the oldest one-third pending for an average of over 1011 days.  The parties stipulate that there is no good reason for an undefended mortgage foreclosure case in Palm Beach County to last more than 180 days.

Pursuant to the Declaration[6] and Florida law, in a non-bankruptcy context the Foreclosure Plaintiffs would not be required to pay Assessments for the maintenance of the Common Elements until they took title to their respective Units.  Because the Debtor relies on Assessments to generate revenue, the delays by

---

[5] Similarly, pursuant to the Plan, the Common Elements constitute part of the collateral securing all of the Allowed Secured Claims in the First Mortgage Classes.

[6] As discussed below, OneWest relies on Florida Statutes section 718.116(1)(b) for the proposition that the first mortgagee on a condominium may not be compelled to pay assessments prior to taking title to the condominium.  Neither party addressed whether the Declaration itself, which essentially incorporates section 718.116(1)(b), prevents the Debtor from seeking to compel OneWest to pay Assessments prior to OneWest's taking title to its Units.  However, the Court notes that Florida Statutes section 718.303 provides that "an action for failure to comply" with the provisions of a declaration of condominium may be brought by "the association or by a unit owner[.]"  Fla. Stat. § 718.303(1).  Thus, the Condominium Act appears to provide that only condominium associations and unit owners may enforce the provisions of a declaration of condominium.  *See Cali v. Meadowbrook Lakes View Condo. Ass'n B Inc.*, 59 So.3d 363, 367 (Fla. 4th DCA 2011) ("The Declaration of Condominium strictly governs the respective duties and responsibilities as between an association and the unit owners." (citing *Woodside Vill. Condo. Ass'n v. Jahren*, 806 So.2d 452, 456 (Fla. 2002))).

the Foreclosure Plaintiffs in completing their Mortgage Foreclosure Proceedings devastated the Debtor's normal cash flow and depleted the Debtor's financial reserves.  This forced the Debtor to raise Assessments on the owners within the Condominium who do timely pay their Assessments and drastically cut back on maintenance and repairs of the Common Elements.  The Debtor asserts that the Foreclosure Plaintiffs are deliberately failing to timely prosecute their Mortgage Foreclosure Proceedings in order to delay taking title to their respective Units.  The Court notes that on September 17, 2010, the Court granted full relief from stay in this case for all of the Foreclosure Plaintiffs to complete their respective Mortgage Foreclosure Proceedings (D.E. 22).

OneWest disputes that it has deliberately delayed taking title to at least two of the Units on which it holds first mortgages, Unit 307 and Unit 1704.[7]  OneWest's Mortgage Foreclosure Proceeding on Unit 307 commenced in Palm Beach County Circuit Court in July 2008.  In April 2010 the owner of Unit 307 entered bankruptcy under Chapter 13, and OneWest was required to retain new counsel in December 2010.[8]  Both of these events delayed the Mortgage Foreclosure Proceeding against Unit 307, which is currently still pending.  The Mortgage Foreclosure Proceeding against Unit 1704 commenced in Palm Beach County Circuit Court in June 2008,

[7] Exhibit A-2(b) to the Joint Stipulation indicates that OneWest holds mortgages on four Units: 307, 610, 1308, and 1704.  OneWest's papers, however, only make arguments with respect to Units 307 and 1704, and do not mention Units 610 and 1308.

[8] David J. Stern, P.A. initially represented OneWest in both the Unit 307 and 1704 foreclosure actions.  That law firm withdrew from thousands of mortgage foreclosure cases throughout Florida in late 2010 and early 2011.

was unopposed, and resulted in the entry of defaults against all defendants. As with the Unit 307 matter, however, the Mortgage Foreclosure Proceeding was delayed in January 2011 when OneWest was required to retain new counsel.

Pursuant to its Plan,[9] the Debtor filed its own foreclosure actions in Palm Beach County Court against certain Units, including Units 307 and 1704. The Debtor's foreclosure action against the owner of Unit 307 commenced in August 2010 and is still pending. The Debtor's foreclosure action against the owner of Unit 1704 commenced in September 2010 and was completed in February 2011. The Debtor received a Certificate of Sale and then a Certificate of Title for Unit 1704 in March 2011, and executed a deed conveying Unit 1704 to OneWest in April 2011. Accordingly, OneWest now owns Units 1704.[10] As previously indicated, however, every Unit is worth less than the amount of the Unit's first mortgage, and each Assessment Lien is inferior to each first mortgage. Thus, the Debtor's successful prosecution of any foreclosure action, including against Unit 1704, could not result in any recovery to the Debtor for its underlying claim for past-due Assessments.

3.    *The Motion and the Response*

Notwithstanding the Foreclosure Plaintiff's failure to pay Assessments, and the Debtor's corresponding decline in revenue, the Debtor continued to incur the cost of maintaining the Common Elements since the Petition Date. In the seven-

---

[9] The Plan provides for the Debtor to acquire title to Units and then surrender title to the Units' respective "Presumed Mortgagees," among other possible relief. *See* Plan art. V.

[10] The Joint Stipulation indicates that Indymac Bank now owns Unit 1704. Jt. Stip. at 8. As explained above, this Order refers to Indymac Bank and OneWest interchangeably.

7

month period between the Petition Date and the first hearing on the Surcharge

Motion, the Debtor incurred the following costs:

| | |
|---|---|
| Contract Labor: | $91,108.66 |
| Insurance: | $81,821.48 |
| Repairs & Maintenance: | $33,229.09 |
| Telephone: | $5,032.31 |
| Utilities: | $21,064.33 |
| **Total:** | **$232,255.87** |

These expenses included electricity for the Common Elements, including the

sprinkler system and security gates; telephone service, including service for the

security system; water for landscaping; alarm service; swimming pool service;

insurance for the Common Elements; electrician service; air conditioning service

and replacement; security gate repair and maintenance; plumbing service and

annual back-flow preventer inspections; employment of property management;

supplies for the repair and maintenance of the Common Elements; and office

supplies and equipment for property management staff.  The Debtor continued to

incur these costs through the Effective Date of the Plan.

OneWest acknowledges that all of these expenditures were necessary for the

operation of the Condominium and the upkeep of the Common Elements.  Jt. Stip.

at 9.  For example, without electricity there would be no lighting for the clubhouse,

parking lot, or walkways, there would be no air-conditioning in the Common

Elements, and the security gate and sprinkler system would not operate; without

water landscaping would die; loss of alarm service would have increased the risk of

criminal activity; loss of insurance would have created a risk of a total loss of

buildings largely comprised of Common Elements; failure to pay for trash, pest, or

8

swimming pool service would have resulted in unsafe, unsanitary conditions and possible enforcement proceedings; and failure to retain property management services would have resulted in a lack of physical property oversight and financial accounting.

Because the Common Elements are part of the collateral securing every first mortgage, and because there is no equity in any Unit exceeding the amount of its first mortgage, the First Mortgagees are the parties primarily benefitting from the Debtor's maintenance of the Common Elements. Jt. Stip. at 10. On account of this benefit, the Debtor seeks to surcharge Delinquent Units on which the First Mortgagees, including OneWest, hold mortgages. These Delinquent Units are late in the payment of their Assessments as of the Effective Date of the Plan. The Debtor does not seek to surcharge Units that are current on their Assessments, and seeks no relief against any Second Mortgagee.[11] Essentially, the Debtor seeks an order requiring First Mortgagees to pay Assessments that have gone unpaid during the delayed Mortgage Foreclosure Proceedings. OneWest, which filed a ballot rejecting the Plan and an objection to the Plan's confirmation, opposes the Motion.

4.    *The Arguments of the Parties*

OneWest relies on Florida law, which shields the holder of a first mortgage on a condominium from paying assessments until the mortgagee takes title to the condominium. *Deutsche Bank Nat'l Trust Co. v. Coral Key Condo. Ass'n (at*

---

[11] The written Motion seeks relief against First and Second Mortgagees. However, the Debtor stipulated at the June 21, 2011 hearing that it did not seek to surcharge any Second Mortgagee.

*Carolina), Inc.*, 32 So.3d 195, 196 (Fla. 4th DCA 2010).  As OneWest points out, federal bankruptcy courts are obliged to apply state law when determining rights and interests in property.  *Butner v. United States*, 440 U.S. 48, 55 (1979).  The Motion seeks to collect the equivalent of assessments that went unpaid during the Mortgage Foreclosure Proceedings, regardless of whether the First Mortgagees have acquired title to their respective Units.  As such, OneWest maintains that Florida law requires the Court to deny the Motion.

The Debtor, on the other hand, argues that 11 U.S.C. § 506(c) applies without reference to state law.  Pursuant to the Supremacy Clause of the United States Constitution, the Debtor asserts that § 506(c) controls in the case of a conflict with Florida law.  The Debtor also asserts that the requirements for surcharge under § 506(c) are satisfied.  This latter point is largely undisputed.

These arguments present an issue of first impression for the Court.  For the reasons that follow, the Court finds that § 506(c) applies without reference to Florida law, and that the requirements of § 506(c) are satisfied.  Accordingly, a surcharge is appropriate.

## CONCLUSIONS OF LAW

### I.    Jurisdiction

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## II.      The Bankruptcy Code Preempts the Condominium Act

OneWest relies on several sections in Chapter 718 of Florida Statutes, the Condominium Act.[12]  The heart of OneWest's argument is Florida Statutes section 718.116(1)(b), which specifically limits a mortgagee's liability for assessments. Section 718.116(1)(b) provides that:

> (b)  The liability of a first mortgagee or its successor or assignees who acquire title to a unit by foreclosure or by deed in lieu of foreclosure for the unpaid assessments that became due before the mortgagee's acquisition of title is limited to the lesser of:
>
> 1.  The unit's unpaid common expenses and regular periodic assessments which accrued or came due during the 12 months immediately preceding the acquisition of title and for which payment in full has not been received by the association; or
>
> 2.  One percent of the original mortgage debt. The provisions of this paragraph apply only if the first mortgagee joined the association as a defendant in the foreclosure action. Joinder of the association is not required if, on the date the complaint is filed, the association was dissolved or did not maintain an office or agent for service of process at a location which was known to or reasonably discoverable by the mortgagee.

---

[12] OneWest also cites to several provisions of Chapter 720, Florida Statutes, which governs homeowners' associations.  However, Chapter 720 is irrelevant to determining the powers of a condominium association in bankruptcy, because there is an entire chapter of Florida law specifically dealing with condominiums.  *See McKendry v. State*, 641 So.2d 45, 46 (Fla. 1994) ("a specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms").  Additionally, as explained below, the Court finds that § 506(c) preempts the Condominium Act.  For the same reasons, assuming Chapter 720 limits the Debtor's ability to surcharge OneWest, § 506(c) preempts any such limitation.

Fla. Stat. § 718.116(1)(b) (2010).  Section 718.116(1)(b) "makes it clear that the first mortgagee is required to pay assessments only after acquiring title," and cannot be compelled to pay assessments during a protracted foreclosure proceeding.  *Coral Key*, 32 So.3d at 196.  Citing section 718.116(1)(b), at least two Florida appellate courts denied essentially the same relief sought by the Debtor in this case: an order requiring a mortgagee to pay its fair share of the costs of maintaining a condominium's common elements during the pendency of a drawn-out foreclosure action.  *Corel Key*, 32 So.3d at 196; *U.S. Bank Nat'l Ass'n v. Tadmore*, 23 So.3d 822 (Fla. 3d DCA 2009).  OneWest asserts that section 718.116(1)(b) requires the same result in this case.

OneWest also relies on sections 718.115 and 718.303 of the Condominium Act.  Section 718.115 provides in relevant part that "funds for payment of the common expenses of a condominium shall be collected by *assessments against the units* in that condominium[,]" and "that Common expenses of a multicondominium association shall be funded by *assessments against all unit owners* in the association[.]"  Fla. Stat. § 718.115(2) and (4)(a) (2010) (emphasis added).  Section 718.303 provides that unit owners and associations are governed by the provisions of "[the Condominium Act], the declaration, the documents creating the association, and the association bylaws[.]"  Fla. Stat. § 718.303(1) (2010).  Section 718.303(1) further provides that an action for failure to comply with the Condominium Act or the declaration may be brought by "the association or by a unit owner" against the association, a unit owner, certain directors, and tenants.  OneWest argues that

under sections 718.115 and 718.303, the Debtor may only bring an action for surcharge against a Unit owner, not a mortgagee.

The Debtor, on the other hand, asserts that § 506(c) of the Bankruptcy Code controls whether a debtor may surcharge a secured creditor, without reference to state law.  Section 506(c) provides that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c).  Section 506(c) codifies a long line of cases "expressing and applying the equitable principle that a lienholder may be charged with the reasonable costs and expenses incurred by the estate that are necessary to preserve or dispose of the lienholder's collateral to the extent that the lienholder derives a benefit as a result."  4 Collier on Bankruptcy ¶ 506.05[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010).  "The purpose of this provision is to prevent a windfall to a secured creditor at the expense of the estate."  *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 483 (4th Cir. 1994); *see also In re Visual Indus., Inc.*, 57 F.3d 321, 352 (3d Cir. 1995) (section 506(c) permits recovery against secured creditors to prevent unjust enrichment) (*citing* Collier on Bankruptcy ¶ 506.06 (Lawrence P. King, et al. eds., 15th ed. 1994)).  The Debtor argues that the Supremacy Clause of the United States Constitution requires the Court to apply § 506(c) notwithstanding contrary state law.

13

The Court finds that § 506(c) applies without reference to state law. Nothing in the Bankruptcy Code indicates that § 506(c) incorporates state law. By contrast, throughout the Bankruptcy Code, Congress uses explicit language when it intends to incorporate state law concepts or preserve state law rights. *See Patterson v. Shumate*, 504 U.S. 753, 758 (1992) (collecting references to "state law" in the Bankruptcy Code). For example, § 522(b)(3)(A) incorporates exemptions available under "State or local law"; § 553 provides that the Bankruptcy Code "does not affect any right of [setoff] that arose" pre-bankruptcy; and §§ 365, 502, and 544 incorporate state law concepts with the phrase "applicable law." The absence of similar language indicates that Congress intended federal law, not state law, to control the application of § 506(c). *In re Welzel*, 275 F.3d 1308, 1315 (11th Cir. 2001) (*en banc*) ("when Congress intend[s] for state law to control in the bankruptcy context, it [says] so with candor."); *see also Dzikowski v. N. Trust Bank of Fla. (In re Prudential of Fla. Leasing, Inc.)*, 478 F.3d 1291, 1299 (11th Cir. 2007) (finding that federal law governs § 550(d) of the Bankruptcy Code, and comparing that section with § 553: "section 553 makes clear that it preserves rights . . . created by non-bankruptcy law[,]" while § 550(d) operates "without reference to state law"). Additionally, § 506(c) codifies the decisions of federal courts under the former Bankruptcy Act. 4 Collier on Bankruptcy ¶ 506.05[1] (citing legislative history and numerous cases). That § 506(c) codifies preexisting federal common law supports the conclusion that federal, not state law, controls the section's application. *See Ferguson v. FDIC*, 164 F.3d 894, 898 (5th Cir. 1999) (doctrine requiring federal

14

courts to apply state law rather than create federal common law does not apply when federal common law "has been long-established").

That the "Bankruptcy Code is often interpreted by reference to state law" does not change this analysis. *Prudential of Fla. Leasing*, 478 F.3d at 1298. The Bankruptcy Code generally defers to state law "whenever Congress has the authority to regulate an area under its bankruptcy powers but has chosen not to do so." *In re Robertson*, 203 F.3d 855, 859 (5th Cir. 2000) (*citing In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051 (5th Cir. 1986)). However, when Congress does exercise its "broad power to establish a uniform rule respecting the existence and extent of a right" in bankruptcy, the rule is not subject to contrary state law. *Hudson Shipbuilders*, 794 F.2d at 1058 (whether attorney's fees are "reasonable" under § 506(b) is a matter of federal, not state law); *see also Welzel*, 275 F.3d at 1315 (same).

The Supremacy Clause compels this result. The Supremacy Clause provides that the laws of the United States "shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. When the Bankruptcy Code and state law conflict, the Code "takes precedence over state laws under the Supremacy Clause[.]" *Stanley ex rel. Estate of Hale v. Trinchard*, 579 F.3d 515, 519 (5th Cir. 2009) (stating that the Supremacy Clause favors the Bankruptcy Code because the "subject of bankruptcies falls within the express constitutional powers of Congress."); *see also E. Equip. & Servs. Corp. v. Factory*

15

*Point Nat'l Bank, Bennington*, 236 F.3d 117, 120 (2d Cir. 2001) (Bankruptcy Code preempted state law tort claims for violation of the automatic stay); *In re Osejo*, 447 B.R. 352 (Bankr. S.D. Fla. 2011) (Bankruptcy Code preempted Florida's constitutional homestead exemption); *In re Old Carco LLC*, 442 B.R. 196 (S.D.N.Y. 2010) (Bankruptcy Code preempted state franchise law that interfered with debtor's power to reject contracts).

In this case, applying section 718.116(1)(b) would shield OneWest from being surcharged even if the requirements of § 506(c) are satisfied. The Supremacy Clause dictates a contrary result. Therefore, § 506(c) preempts Florida Statutes section 718.116(1)(b). Similarly, assuming that sections 718.115 and 718.303 limit a mortgagee's liability for assessments, § 506(c) preempts any such limitation.[13]

OneWest maintains that the Rules of Decision Act, 28 U.S.C. § 1652,[14] and *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), require the Court to apply state law. The Rules of Decision Act, and the Supreme Court cases construing it, generally require that federal courts "fill the interstices of federal remedial schemes" by incorporating state law as the federal rule of decision, rather than by creating federal common law. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991).

---

[13] Preemption aside, the Court notes that OneWest's reliance on sections 718.115 and 718.303 is misplaced. Essentially, OneWest argues that these sections preclude the possibility that a condominium association may recover assessments from a mortgagee. This argument is untenable considering that section 718.116(1)(b) specifically provides that a first mortgagee may be liable for assessments, albeit in the context of limiting that liability.

[14] The Rules of Decision Act provides that "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." 28 U.S.C. § 1652.

That doctrine is inapplicable in this case, however, because there is a federal statute on point. *See Gen. Motors Corp. v. EPA*, 168 F.3d 1377, 1380 (D.C. Cir. 1999). Although "[s]tate law will generally fill the gaps in a comprehensive federal statutory scheme," such as the Bankruptcy Code, "it will not do so to the exclusion of another applicable federal statute." *Auction Co. of Am. v. FDIC*, 132 F.3d 746, 749 (D.C. Cir. 1997); *see also O'Melveny & Meyers v. FDIC,* 512 U.S. 79, 85 (1994) ("In answering the central question of displacement of [state law], we of course would not contradict an explicit federal statutory provision."). Thus, when a federal law applies "by its own terms," and "not by virtue of any lawmaking power of the federal courts," "there is no choice of law issue." *Gen. Motors*, 168 F.3d at 1380 (*quoting Auction Co.*, 132 F.3d at 749) (finding no error in refusing to apply state law when federal statute supplied relevant standard). This is because the federal statute itself creates the rule of decision, and a "Congressionally-created rule of decision" is "not subordinated to state statutes or regulations." *RTC v. Diamond*, 45 F.3d 665, 670-71 (2d Cir. 1995) (federal statute authorizing repudiation of certain contracts preempted state anti-eviction law). Construing such a federal statute "is, and always has been, a matter of federal law." *Id.* at 671-72.

OneWest appears to acknowledge this flaw in its argument. In its written proposed order, OneWest points out that "Erie requires that, *unless there is an applicable federal law* (including a provision in the Constitution, statute, or treaty), state law applies." OneWest Proposed Order at 17 (emphasis added). The Court

agrees.    Section 506(c) is the applicable federal law governing a debtor-in-possession's ability to surcharge collateral.  Therefore, state law does not apply.

## III.    Surcharge is Appropriate Pursuant to § 506(c)

Having determined that the Condominium Act does not apply to the Motion, the Court must determine whether granting the Motion is appropriate as a matter of federal law.  To recover an expense under § 506(c), a debtor-in-possession must show that the secured creditor expressly or impliedly consented to the expense.  *In re Computer Servs.*, 2011 WL 938308, at *782 (Bankr. N.D. Ohio 2011) (*citing In re Ferncrest Court Partners, Ltd.*, 66 F.3d 778, 782 (6th Cir. 1995)).  Absent consent, the debtor-in-possession must show that: (1) the expenditure was necessary; (2) the amount expended was reasonable; and (3) the creditor benefited from the expenditure.  *Ferncrest*, 66 F.3d at 782; *see also In re Scopeta-Senra P'ship III*, 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991).

In this case, the Debtor argues that the expenses were necessary to preserve, maintain, and repair the Common Elements, that the expenses were reasonable, and that the expenses benefitted OneWest.[15]  OneWest stipulates that the expenses were necessary and benefitted OneWest.  Jt. Stip. at 9, 10.  Additionally, the Debtor represented in the Motion that the expenses were reasonable, and made a proffer to that effect at the March 8, 2011 hearing.  At that hearing, OneWest expressly

---

[15] The Debtor also argues that OneWest consented to the expenditures by taking mortgages on Units, including the Common Elements, with notice that the Declaration expressly required the Debtor to maintain, operate, and insure the Common Elements.  As the Debtor points out, the Declaration was recorded prior to any mortgage on any Unit.  However, because the Court finds that the expenses at issue were necessary, reasonable, and benefitted OneWest, the Court need not resolve the Debtor's consent argument.

18

declined to object either to the proffer or the representation in the Motion.  Hr'g Tr. 6:11-14, March 8, 2011.  Moreover, OneWest failed to assert that the expenses were unreasonable in its Response, in its written proposed order, or at the June 21, 2011 hearing.  On the contrary, in its written proposed order OneWest acknowledged that the expenses are reasonable, and that the Debtor exercised considerable restraint in keeping expenses as low as possible during the pendency of this case. OneWest Proposed Order at 13.  Additionally, the Debtor offers in support of the Motion the Standard Monthly Operating Reports from the period for which surcharge is sought (D.E. 29, 48, 60, 72, 95, and 117).  Having reviewed the relevant operating reports, and taking into consideration OneWest's failure to object to the reasonableness of the expenses, the Court finds that the expenses are reasonable. Accordingly, the Debtor has met its burden of showing that a surcharge pursuant to § 506(c) is appropriate.

There are two other issues the Court must address.  First, the Court makes no findings as to whether it would be appropriate to award a surcharge for expenses the Debtor incurred after it foreclosed its Assessment Lien on Unit 1704, or after the Debtor conveyed title to OneWest.  The Debtor stipulated at the June 21, 2011 hearing that this Motion only seeks reimbursement of expenses incurred from the Petition Date through February 15, 2011.  Thus, the Debtor incurred all of the costs at issue before it foreclosed its Assessment Lien or conveyed title of Unit 1704 to OneWest.  In other words, this Order only grants a surcharge for expenses incurred

while OneWest was the first mortgagee on Unit 1704, under circumstances where the First Mortgagees undisputedly reaped the primary benefit of those expenses.

Second, the Court finds that whether OneWest deliberately delayed taking title to Units 307 and 1704 is irrelevant to the determination of the Motion. The purpose of § 506(c) is to prevent a secured creditor's unjust enrichment, not to punish dilatory intent. *See JKJ Chevrolet*, 26 F.3d at 483. The undisputed facts are that the expense of maintaining the Common Elements were the reasonable, necessary costs of preserving OneWest's collateral, and that OneWest benefited from the expenditure. It would be inequitable to permit OneWest to enjoy this benefit without paying its fair share of the cost. Applying § 506(c) avoids such a result. Therefore, the Court finds that a surcharge is appropriate.

## IV.    Enforcement of Surcharge

For the reasons set forth above, the Court finds that OneWest should bear the pro rata cost of preserving the Common Elements. To give effect to this relief, the Debtor seeks authority to (1) make demand upon OneWest for payment of the surcharge, and (2) record a claim of lien for the amount of the surcharge for each respective Unit.[16] In the event OneWest fails to pay the sums due for its respective

---

[16] In its written proposed order, the Debtor sought authority to record a claim of lien for the amount of the surcharge "prior, paramount and superior to the lien and effect of the mortgages securing the claims of any First Mortgagee or Second Mortgagee[.]" Debtor Proposed Order at 17. The Court will not consider this relief because the Debtor did not request it in the written Motion and thus no First Mortgagee, with the possible exception of OneWest, received notice of the request. However, the Court notes that the case the Debtor cites in support of its request to record super-priority liens, *In re Better-Brite Platting,* 105 B.R. 912 (Bankr. E.D. Wisc. 1989), *vacated,* 136 B.R. 526 (1990), is not compelling. Aside from being vacated, that case is distinguishable because it involved environmental claims, which pose unique challenges in bankruptcy and are afforded high priority

20

Units within thirty days of demand, the Debtor requests authority to (a) seek a contempt judgment for damages from this Court, (b) seek an order from this Court directing the public sale of the subject Units free and clear of all liens, claims or encumbrances, or (c) commence an action in state court to foreclose its claim of lien. The Debtor urges that some enforcement mechanism is necessary because of the First and Second Mortgagees' general pattern of ignoring this case as it relates to their respective collateral. The Debtor points out that of the 252 First and Second Mortgagees potentially affected by the outcome of this Motion, only OneWest filed an objection.

It would be inappropriate, however, to determine the proper method of compelling compliance with this Order without first giving OneWest the opportunity to comply willingly. That the First and Second Mortgagees have generally remained aloof until this point is not evidence that the Mortgagees, or OneWest in particular, will fail to pay the surcharge awarded herein. Of course, the Court retains its inherent authority to enforce compliance with its own orders. *See Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1553 (11th Cir. 1996) ("courts have inherent contempt powers in all proceedings, including bankruptcy"); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). The Court will consider the appropriate method of compelling such

---

due to concerns for public health and safety. *See, e.g., In re Wall Tube & Metal Products Co.*, 831 F.2d 118, 123 (6th Cir. 1987).

compliance if and when it becomes necessary.  Therefore, the Court will deny the Motion without prejudice to the extent it seeks authority to enforce the surcharge beyond demand for payment.

## CONCLUSION

The Court finds that § 506(c) applies without reference to state law in light of the section's language, and because § 506(c) codifies well-established federal common law.  The Court further finds that the Bankruptcy Code preempts Florida law to the extent the latter purports to limit the Debtor's power under § 506(c).  As such, because the Debtor's expenditures for the upkeep of the Common Elements were necessary, reasonable, and benefitted OneWest, the Court will grant the Debtor's request for a surcharge.  However, the Court denies without prejudice the Motion to the extent it seeks authority to enforce the Debtor's surcharge through extraordinary means without further order of the Court.

## ORDER

The Court, having reviewed the submissions of the parties, the applicable law, and being otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1. OneWest's Objection is **OVERRULED**.

2. The Motion is **GRANTED IN PART**.

3. A surcharge is granted in favor of the Debtor against the Units securing OneWest's claims in the amounts reflected in the attached Exhibit A-2.

4. The Debtor may make demand upon OneWest for payment of the surcharge granted herein.  OneWest shall pay the sums due on account of such surcharge within thirty (30) days of the mailing of such demand.

5. With respect to any other form of enforcement without further order, the Motion is **DENIED WITHOUT PREJUDICE**.

6. The Court retains jurisdiction to enforce the provisions of this Order.

###

Copies to:

Bradley S. Shraiberg, Debtor's Counsel

Debtor's Counsel shall serve a copy of this Order on all interested parties and file a certificate of service pursuant to Local Rule 2002-1(F).



## SURCHARGE TABLE BY UNIT

| Unit | Unit Type | Presumed Mortgagee | Second Mortgagee | Surcharge |
|------|-----------|--------------------|-------------------|-----------|
| 104 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 105 | Stafford | Countrywide Bank | Countrywide Bank | $832.65 |
| 107 | Biltmore | SunTrust Bank, N.A. | None | $1,223.04 |
| 108 | Amberly | BAC Home Loans Servicing LP | None | $758.87 |
| 110 | Edinburg | U. S Bank National Association | U. S Bank National Association | $1,018.09 |
| 112 | Camelot | U. S Bank National Association | None | $1,091.97 |
| 113 | Edinburg | Deutsche Bank National Trust Co | None | $1,018.09 |
| 201 | Amberly | U. S Bank National Association | ACT Lending | $758.87 |
| 203 | Edinburg | U. S Bank National Association | Lehman Brothers Bank | $1,018.09 |
| 206 | Edinburg | Countrywide Bank | None | $1,018.09 |
| 207 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 210 | Edinburg | Litton Loan Servicing, L.P. | First Bank, d/b/a First Bank Mortgage | $1,018.09 |
| 211 | Stafford | Home Mortgage Finance Group Corp. | None | $832.65 |
| 212 | Amberly | America's Wholesale Lender | None | $758.87 |
| 214 | Versailles | Countrywide Bank | None | $1,205.95 |
| 301 | Edinburg | Deutsche Bank National Trust Co | America's Broker Conduit | $1,018.09 |
| 303 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 305 | Stafford | BAC Home Loans Servicing, LP | None | $832.65 |
| 307 | Biltmore | IndyMac Bank, F.S.B. | IndyMac Bank, F.S.B. | $1,223.04 |
| 309 | Stafford | BAC Home Loans Servicing, LP | None | $832.65 |
| 312 | Camelot | Suntrust Mortgage, INC | None | $1,091.97 |
| 313 | Edinburg | BAC Home Loans Servicing, LP | None | $1,018.09 |
| 403 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 405 | Stafford | Countrywide Bank | Countrywide Bank | $832.65 |
| 406 | Amberly | Wells Fargo Bank | None | $758.87 |
| 408 | Versailles | Citimortgage, Inc | None | $1,205.95 |
| 412 | Camelot | Chase Home Finance, LLC | None | $1,091.97 |
| 413 | Camelot | Wells Fargo Bank | Washington Mutual Bank, FA | $1,091.97 |
| 414 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 501 | Edinburg | Countrywide Bank | None | $1,018.09 |
| 502 | Camelot | JP Morgan Chase Bank | None | $1,091.97 |
| 503 | Camelot | Citimortgage, Inc | None | $1,091.97 |
| 504 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 505 | Stafford | LaSalle Bank NA | None | $832.65 |
| 507 | Windsor | Chase Home Finance, LLC | Countrywide Bank | $1,277.80 |
| 510 | Stafford | BAC Home Loans Servicing LP | None | $832.65 |
| 511 | Edinburg | Chase Home Finance, LLC | None | $1,018.09 |
| 512 | Camelot | Countrywide Bank | None | $1,091.97 |
| 513 | Camelot | America's Wholesale Lender | None | $1,091.97 |
| 601 | Amberly | Aurora Loan Services LLC | None | $758.87 |
| 602 | Stafford | Navy Federal Credit Union | None | $832.65 |
| 603 | Edinburg | Mortgageit, Inc. | None | $1,018.09 |
| 604 | Camelot | U. S Bank National Association | ACT Lending | $1,091.97 |
| 606 | Edinburg | HSBC Bank USA | Countrywide Bank | $1,018.09 |
| 608 | Camelot | America's Wholesale Lender | None | $1,091.97 |
| 610 | Edinburg | IndyMac Bank, F.S.B. | IndyMac Bank, F.S.B. | $1,018.09 |
| 611 | Stafford | Bank of America N.A. | None | $832.65 |
| 612 | Amberly | U. S Bank National Association | America's Broker Conduit | $758.87 |

| 703 | Camelot | Chase Home Finance, LLC | None | $1,091.97 |
|---|---|---|---|---|
| 705 | Stafford | America's Wholesale Lender | None | $832.65 |
| 707 | Biltmore | Countrywide Home Loans, Inc | None | $1,223.04 |
| 709 | Stafford | Countrywide Bank | Countrywide Bank | $832.65 |
| 710 | Edinburg | America's Wholesale Lender | None | $1,018.09 |
| 712 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 713 | Edinburg | America's Wholesale Lender | None | $1,018.09 |
| 801 | Edinburg | HSBC Bank USA | None | $1,018.09 |
| 802 | Camelot | Florida Atlantic Mortgage Corp. | None | $1,091.97 |
| 803 | Camelot | JP Morgan Chase Bank | None | $1,091.97 |
| 805 | Stafford | America's Wholesale Lender | None | $832.65 |
| 806 | Amberly | JP Morgan Chase Bank | None | $758.87 |
| 807 | Windsor | Washington Mutual Bank, FA | Accredited Home Lenders, Inc. | $1,277.80 |
| 809 | Amberly | Wells Fargo Bank | Countrywide Bank | $758.87 |
| 811 | Edinburg | Aurora Loan Services LLC | None | $1,018.09 |
| 812 | Camelot | Countrywide Bank | America's Wholesale Lender | $1,091.97 |
| 901 | Amberly | First National Bank of Arizona | None | $758.87 |
| 902 | Stafford | BAC Home Loans Servicing LP | None | $832.65 |
| 905 | Camelot | Bank of New York | America's Wholesale Lender | $1,091.97 |
| 907 | Edinburg | Countrywide Home Loan Servicing, L.P. | New Century Mortgage Corp. | $1,018.09 |
| 908 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 910 | Edinburg | Liberty Home Lending, Inc. | None | $1,018.09 |
| 911 | Stafford | America's Wholesale Lender | None | $832.65 |
| 912 | Amberly | Chase Home Finance, LLC | JP Morgan Chase Bank | $758.87 |
| 914 | Versailles | GMAC Mortgage, LLC | America's Wholesale Lender | $1,205.95 |
| 1003 | Camelot | Chase Home Finance, LLC | Chase Bank USA | $1,091.97 |
| 1005 | Stafford | Chase Home Finance, LLC | JP Morgan Chase Bank | $832.65 |
| 1006 | Amberly | America's Wholesale Lender | None | $758.87 |
| 1009 | Amberly | Wells Fargo Bank | PEMM. TEK Mortgage Services, LLC | $758.87 |
| 1010 | Stafford | Bank of New York | None | $832.65 |
| 1011 | Edinburg | Chase Home Finance, LLC | None | $1,018.09 |
| 1013 | Camelot | Bank of New York | None | $1,091.97 |
| 1014 | Edinburg | Aurora Loan Services LLC | First Magnus Mortgage Corp. | $1,018.09 |
| 1101 | Amberly | Bank of New York | America's Wholesale Lender | $758.87 |
| 1102 | Stafford | JP Morgan Chase Bank | None | $832.65 |
| 1103 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 1106 | Edinburg | Deutsche Bank National Trust Co | America's Wholesale Lender | $1,018.09 |
| 1108 | Camelot | Bank of New York | None | $1,091.97 |
| 1109 | Camelot | BAC Home Loans Servicing LP | None | $1,091.97 |
| 1111 | Stafford | America's Wholesale Lender | None | $832.65 |
| 1114 | Versailles | Aurora Loan Services LLC | First Magnus Mortgage Corp. | $1,205.95 |
| 1204 | Camelot | Countrywide Bank | None | $1,091.97 |
| 1205 | Camelot | Wells Fargo Bank | Countrywide Bank | $1,091.97 |
| 1207 | Edinburg | U. S Bank National Association | Aegis Wholesale Corp. | $1,018.09 |
| 1208 | Camelot | Bank of New York | None | $1,091.97 |
| 1210 | Edinburg | U. S Bank National Association | Lehman Brothers Bank | $1,018.09 |
| 1211 | Stafford | Countrywide Bank | America's Wholesale Lender | $832.65 |
| 1214 | Versailles | Bank of New York | Ownit Mortgage Solutions, Inc. | $1,205.95 |
| 1301 | Amberly | JP Morgan Chase Bank | National City Bank | $758.87 |
| 1304 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 1305 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 1306 | Edinburg | U. S Bank National Association | Argent Mortgage Company, LLC | $1,018.09 |
| 1307 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |

| 1308 | Camelot | IndyMac Bank, F.S.B. | IndyMac Bank, F.S.B. | $1,091.97 |
| 1309 | Camelot | JP Morgan Chase Bank | None | $1,091.97 |
| 1310 | Edinburg | Aurora Loan Services LLC | Lehman Brothers Bank | $1,018.09 |
| 1312 | Amberly | Countrywide Bank | None | $758.87 |
| 1402 | Stafford | JP Morgan Chase Bank | None | $832.65 |
| 1405 | Camelot | Citimortgage, Inc | None | $1,091.97 |
| 1406 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 1408 | Camelot | Citibank | Aegis Wholesale Corp. | $1,091.97 |
| 1409 | Camelot | First Magnus Financial Corporation | First Magnus Mortgage Corp. | $1,091.97 |
| 1410 | Edinburg | Bank of New York | Countrywide Bank | $1,018.09 |
| 1412 | Amberly | Mortgage Electronic Registration Systems, Inc | None | $758.87 |
| 1501 | Edinburg | JP Morgan Chase Bank | None | $1,018.09 |
| 1502 | Camelot | Wells Fargo Bank | None | $1,091.97 |
| 1504 | Edinburg | U. S Bank National Association | Lehman Brothers Bank | $1,018.09 |
| 1505 | Stafford | JP Morgan Chase Bank | None | $832.65 |
| 1506 | Amberly | JP Morgan Chase Bank | National City Bank | $758.87 |
| 1508 | Versailles | Deutsche Bank National Trust Co | New Century Mortgage Corp. | $1,205.95 |
| 1509 | Amberly | BAC Home Loans Servicing, LP | None | $758.87 |
| 1513 | Camelot | Wells Fargo Bank | None | $1,091.97 |
| 1601 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 1602 | Camelot | Bank of New York | Countrywide Bank | $1,091.97 |
| 1603 | Camelot | Amtrust Bank | None | $1,091.97 |
| 1605 | Stafford | BAC Home Loans Servicing, LP | None | $832.65 |
| 1608 | Windsor | Florida Atlantic Mortgage Corp. | None | $1,277.80 |
| 1609 | Amberly | Countrywide Bank | None | $758.87 |
| 1610 | Stafford | Bank of New York | None | $832.65 |
| 1611 | Edinburg | Countrywide Home Loans, Inc | Countrywide Bank | $1,018.09 |
| 1614 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 1701 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 1703 | Camelot | Chase Home Finance, LLC | None | $1,091.97 |
| 1704 | Edinburg | IndyMac Bank, F.S.B. | IndyMac Bank, F.S.B. | $1,018.09 |
| 1707 | Biltmore | U. S Bank National Association | Countrywide Bank | $1,223.04 |
| 1708 | Amberly | Nationstar Mortgage | Fremont Investment Loan | $758.87 |
| 1709 | Stafford | Bank of New York | None | $832.65 |
| 1712 | Camelot | Countrywide Bank | None | $1,091.97 |



EXHIBIT
A-2(b)

## SURCHARGE TABLE BY LENDER

| Unit | Unit Type | Presumed Mortgagee | Second Mortgagee | Surcharge |
|------|-----------|--------------------|--------------------|-----------|
| 212 | Amberly | America's Wholesale Lender | None | $758.87 |
| 513 | Camelot | America's Wholesale Lender | None | $1,091.97 |
| 608 | Camelot | America's Wholesale Lender | None | $1,091.97 |
| 705 | Stafford | America's Wholesale Lender | None | $832.65 |
| 710 | Edinburg | America's Wholesale Lender | None | $1,018.09 |
| 713 | Edinburg | America's Wholesale Lender | None | $1,018.09 |
| 805 | Stafford | America's Wholesale Lender | None | $832.65 |
| 911 | Stafford | America's Wholesale Lender | None | $832.65 |
| 1006 | Amberly | America's Wholesale Lender | None | $758.87 |
| 1111 | Stafford | America's Wholesale Lender | None | $832.65 |
| 1603 | Camelot | Amtrust Bank | None | $1,091.97 |
| 601 | Amberly | Aurora Loan Services LLC | None | $758.87 |
| 811 | Edinburg | Aurora Loan Services LLC | None | $1,018.09 |
| 1014 | Edinburg | Aurora Loan Services LLC | First Magnus Mortgage Corp. | $1,018.09 |
| 1114 | Versailles | Aurora Loan Services LLC | First Magnus Mortgage Corp. | $1,205.95 |
| 1310 | Edinburg | Aurora Loan Services LLC | Lehman Brothers Bank | $1,018.09 |
| 108 | Amberly | BAC Home Loans Servicing LP | None | $758.87 |
| 510 | Stafford | BAC Home Loans Servicing LP | None | $832.65 |
| 902 | Stafford | BAC Home Loans Servicing LP | None | $832.65 |
| 1109 | Camelot | BAC Home Loans Servicing LP | None | $1,091.97 |
| 305 | Stafford | BAC Home Loans Servicing, LP | None | $832.65 |
| 309 | Stafford | BAC Home Loans Servicing, LP | None | $832.65 |
| 313 | Edinburg | BAC Home Loans Servicing, LP | None | $1,018.09 |
| 1509 | Amberly | BAC Home Loans Servicing, LP | None | $758.87 |
| 1605 | Stafford | BAC Home Loans Servicing, LP | None | $832.65 |
| 611 | Stafford | Bank of America N.A. | None | $832.65 |
| 207 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 414 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 905 | Camelot | Bank of New York | America's Wholesale Lender | $1,091.97 |
| 1010 | Stafford | Bank of New York | None | $832.65 |
| 1013 | Camelot | Bank of New York | None | $1,091.97 |
| 1101 | Amberly | Bank of New York | America's Wholesale Lender | $758.87 |
| 1103 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 1108 | Camelot | Bank of New York | None | $1,091.97 |
| 1208 | Camelot | Bank of New York | None | $1,091.97 |
| 1214 | Versailles | Bank of New York | Ownit Mortgage Solutions, Inc. | $1,205.95 |
| 1307 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 1410 | Edinburg | Bank of New York | Countrywide Bank | $1,018.09 |
| 1602 | Camelot | Bank of New York | Countrywide Bank | $1,091.97 |
| 1610 | Stafford | Bank of New York | None | $832.65 |
| 1701 | Edinburg | Bank of New York | America's Wholesale Lender | $1,018.09 |
| 1709 | Stafford | Bank of New York | None | $832.65 |
| 412 | Camelot | Chase Home Finance, LLC | None | $1,091.97 |
| 507 | Windsor | Chase Home Finance, LLC | Countrywide Bank | $1,277.80 |
| 511 | Edinburg | Chase Home Finance, LLC | None | $1,018.09 |
| 703 | Camelot | Chase Home Finance, LLC | None | $1,091.97 |
| 912 | Amberly | Chase Home Finance, LLC | JP Morgan Chase Bank | $758.87 |
| 1003 | Camelot | Chase Home Finance, LLC | Chase Bank USA | $1,091.97 |

| 1005 | Stafford | Chase Home Finance, LLC | JP Morgan Chase Bank | $832.65 |
|------|----------|-------------------------|----------------------|---------|
| 1011 | Edinburg | Chase Home Finance, LLC | None | $1,018.09 |
| 1703 | Camelot | Chase Home Finance, LLC | None | $1,091.97 |
| 1408 | Camelot | Citibank | Aegis Wholesale Corp. | $1,091.97 |
| 104 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 408 | Versailles | Citimortgage, Inc | None | $1,205.95 |
| 503 | Camelot | Citimortgage, Inc | None | $1,091.97 |
| 504 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 1405 | Camelot | Citimortgage, Inc | None | $1,091.97 |
| 1406 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 1601 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 1614 | Edinburg | Citimortgage, Inc | None | $1,018.09 |
| 105 | Stafford | Countrywide Bank | Countrywide Bank | $832.65 |
| 206 | Edinburg | Countrywide Bank | None | $1,018.09 |
| 214 | Versailles | Countrywide Bank | None | $1,205.95 |
| 303 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 403 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 405 | Stafford | Countrywide Bank | Countrywide Bank | $832.65 |
| 501 | Edinburg | Countrywide Bank | None | $1,018.09 |
| 512 | Camelot | Countrywide Bank | None | $1,091.97 |
| 709 | Stafford | Countrywide Bank | Countrywide Bank | $832.65 |
| 712 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 812 | Camelot | Countrywide Bank | America's Wholesale Lender | $1,091.97 |
| 908 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 1204 | Camelot | Countrywide Bank | None | $1,091.97 |
| 1211 | Stafford | Countrywide Bank | America's Wholesale Lender | $832.65 |
| 1304 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 1305 | Camelot | Countrywide Bank | Countrywide Bank | $1,091.97 |
| 1312 | Amberly | Countrywide Bank | None | $758.87 |
| 1609 | Amberly | Countrywide Bank | None | $758.87 |
| 1712 | Camelot | Countrywide Bank | None | $1,091.97 |
| 907 | Edinburg | Countrywide Home Loan Servicing, L.P. | New Century Mortgage Corp. | $1,018.09 |
| 707 | Biltmore | Countrywide Home Loans, Inc | None | $1,223.04 |
| 1611 | Edinburg | Countrywide Home Loans, Inc | Countrywide Bank | $1,018.09 |
| 113 | Edinburg | Deutsche Bank National Trust Co | None | $1,018.09 |
| 301 | Edinburg | Deutsche Bank National Trust Co | America's Broker Conduit | $1,018.09 |
| 1106 | Edinburg | Deutsche Bank National Trust Co | America's Wholesale Lender | $1,018.09 |
| 1508 | Versailles | Deutsche Bank National Trust Co | New Century Mortgage Corp. | $1,205.95 |
| 1409 | Camelot | First Magnus Financial Corporation | First Magnus Mortgage Corp. | $1,091.97 |
| 901 | Amberly | First National Bank of Arizona | None | $758.87 |
| 802 | Camelot | Florida Atlantic Mortgage Corp. | None | $1,091.97 |
| 1608 | Windsor | Florida Atlantic Mortgage Corp. | None | $1,277.80 |
| 914 | Versailles | GMAC Mortgage, LLC | America's Wholesale Lender | $1,205.95 |
| 211 | Stafford | Home Mortgage Finance Group Corp. | None | $832.65 |
| 606 | Edinburg | HSBC Bank USA | Countrywide Bank | $1,018.09 |
| 801 | Edinburg | HSBC Bank USA | None | $1,018.09 |
| 307 | Biltmore | IndyMac Bank, F.S.B. | IndyMac Bank, F.S.B. | $1,223.04 |
| 610 | Edinburg | IndyMac Bank, F.S.B. | IndyMac Bank, F.S.B. | $1,018.09 |
| 1308 | Camelot | IndyMac Bank, F.S.B. | IndyMac Bank, F.S.B. | $1,091.97 |
| 1704 | Edinburg | IndyMac Bank, F.S.B. | IndyMac Bank, F.S.B. | $1,018.09 |
| 502 | Camelot | JP Morgan Chase Bank | None | $1,091.97 |
| 803 | Camelot | JP Morgan Chase Bank | None | $1,091.97 |
| 806 | Amberly | JP Morgan Chase Bank | None | $758.87 |

| 1102 | Stafford | JP Morgan Chase Bank | None | $832.65 |
|------|----------|----------------------|------|---------|
| 1301 | Amberly | JP Morgan Chase Bank | National City Bank | $758.87 |
| 1309 | Camelot | JP Morgan Chase Bank | None | $1,091.97 |
| 1402 | Stafford | JP Morgan Chase Bank | None | $832.65 |
| 1501 | Edinburg | JP Morgan Chase Bank | None | $1,018.09 |
| 1505 | Stafford | JP Morgan Chase Bank | None | $832.65 |
| 1506 | Amberly | JP Morgan Chase Bank | National City Bank | $758.87 |
| 505 | Stafford | LaSalle Bank NA | None | $832.65 |
| 910 | Edinburg | Liberty Home Lending, Inc. | None | $1,018.09 |
| 210 | Edinburg | Litton Loan Servicing, L.P. | First Bank, d/b/a First Bank Mortgage | $1,018.09 |
| 1412 | Amberly | Mortgage Electronic Registration Systems, Inc | None | $758.87 |
| 603 | Edinburg | Mortgageit, Inc. | None | $1,018.09 |
| 1708 | Amberly | Nationstar Mortgage | Fremont Investment Loan | $758.87 |
| 602 | Stafford | Navy Federal Credit Union | None | $832.65 |
| 107 | Biltmore | SunTrust Bank, N.A. | None | $1,223.04 |
| 312 | Camelot | Suntrust Mortgage, INC | None | $1,091.97 |
| 110 | Edinburg | U. S Bank National Association | U. S Bank National Association | $1,018.09 |
| 112 | Camelot | U. S Bank National Association | None | $1,091.97 |
| 201 | Amberly | U. S Bank National Association | ACT Lending | $758.87 |
| 203 | Edinburg | U. S Bank National Association | Lehman Brothers Bank | $1,018.09 |
| 604 | Camelot | U. S Bank National Association | ACT Lending | $1,091.97 |
| 612 | Amberly | U. S Bank National Association | America's Broker Conduit | $758.87 |
| 1207 | Edinburg | U. S Bank National Association | Aegis Wholesale Corp. | $1,018.09 |
| 1210 | Edinburg | U. S Bank National Association | Lehman Brothers Bank | $1,018.09 |
| 1306 | Edinburg | U. S Bank National Association | Argent Mortgage Company, LLC | $1,018.09 |
| 1504 | Edinburg | U. S Bank National Association | Lehman Brothers Bank | $1,018.09 |
| 1707 | Biltmore | U. S Bank National Association | Countrywide Bank | $1,223.04 |
| 807 | Windsor | Washington Mutual Bank, FA | Accredited Home Lenders, Inc. | $1,277.80 |
| 406 | Amberly | Wells Fargo Bank | None | $758.87 |
| 413 | Camelot | Wells Fargo Bank | Washington Mutual Bank, FA | $1,091.97 |
| 809 | Amberly | Wells Fargo Bank | Countrywide Bank | $758.87 |
| 1009 | Amberly | Wells Fargo Bank | PEMM. TEK Mortgage Services, LLC | $758.87 |
| 1205 | Camelot | Wells Fargo Bank | Countrywide Bank | $1,091.97 |
| 1502 | Camelot | Wells Fargo Bank | None | $1,091.97 |
| 1513 | Camelot | Wells Fargo Bank | None | $1,091.97 |